WILLIAM H. PETERSON v. B. J. BRANTON.[1]

May 25, 1917.

Nos. 20,336—(148).

**Physician and surgeon — refusal to follow treatment.**

1. Where a patient refuses to submit to the reasonable treatment pre-
scribed by a surgeon, from that time on the fault is with the patient and
not with the surgeon.

**Same — opinion evidence.**

2. Where a patient refuses to submit to the reasonable treatment
prescribed by his surgeon, the surgeon may give in evidence his opin-
ion of what the result would have been had the treatment which he
prescribed been followed.

Action in the district court for Kandiyohi county to recover $7,500
for malpractice. The defense was a general denial. The case was tried
before Qvale, J., and a jury which returned a verdict in favor of plaintiff
for $4,500. Defendant's motion for judgment notwithstanding the
verdict was denied and his motion for a new trial was denied on condi-
tion that plaintiff consent to a reduction of $1,500 from the verdict. From
the order denying his motion for judgment notwithstanding the verdict
or for a new trial, defendant appealed. Reversed.

*Durment, Moore, Oppenheimer & Haupt* and *George H. Otterness,*
for appellant.

*T. O. Gilbert* and *Fosnes & Fosnes,* for respondent.

QUINN, J.

This is an action against the defendant, a physician and surgeon,
to recover damages claimed to be the result of negligent and unskilful
treatment of a fracture of plaintiff's arm. The cause was tried and
submitted to a jury and a verdict returned for the plaintiff in the sum of
$4,500. Defendant moved for judgment notwithstanding the verdict
or a new trial. The trial court made an order denying defendant's
motion for judgment, and also made an order granting the defendant's

[1]Reported in 162 N. W. 895.

motion for a new trial, unless plaintiff, within 10 days, remit the sum of $1,500 from the amount of the verdict, in which case the motion would be denied. Pursuant to such order, plaintiff filed a remittitur of $1,500 and an agreement to abide by the verdict as reduced, and the defendant appealed from each of such orders.

There is no dispute but that plaintiff is a man of 49 years of age, residing at Willmar in this state, and that on October 25, 1914, he sustained a fracture of both bones of the right forearm between 3 and 4 inches from the wrist, as the result of a collision with a motorcycle on one of the public highways within a few miles of his home; that the defendant, who is a practicing physician and surgeon, also residing at Willmar, was immediately called, and that he properly treated the injured arm by the application of splints and bandages, with the object of effecting a reduction of the fracture and a union of the bones.

At the trial plaintiff testified: That defendant reduced the fracture within about 2 hours from the time of the injury; and that during the following morning and on every second day thereafter for about 2 weeks he went to the hospital where defendant removed the bandages and splints, examined the arm by X-ray, a Fluoroscope and otherwise, and then reapplied the splints and bandages; and that at the end of 7 or 8 days the arm was straight and seemed to be doing all right; that thereafter he visited defendant less frequently; and that at each visit the defendant removed the bandages and splints and examined the arm, and reapplied the bandages and splints in about the same manner, and that about 6 weeks after the injury he first noticed a lump and that the arm was not straight. There was no testimony that the treatments were improperly performed, or that there was negligence in the manner of applying the splints or bandages with reference to extension or otherwise. Plaintiff then called two physicians as expert witnesses; the first, Dr. Jacobs, testified that in the spring of 1916 he took X-ray pictures of the arm which showed a nonunion of the radius. Plaintiff's other expert witness, Dr. Johnson, was then called, and he testified as to having examined plaintiff's arm in the spring of 1916, and that, assuming the testimony of the plaintiff with reference to the frequent removal of the splints by the defendant to be true, and taking into consideration the condition of

plaintiff's arm, he would say the treatment was not proper; that it was his opinion that proper extension was overlooked in reapplying the splints. This testimony was all received over defendant's objection. The defendant contended that it is apparent that Dr. Johnson based his opinion upon the result or present condition of plaintiff's arm, and not upon any proof as to how the splints were applied. This contention on behalf of defendant cannot be sustained. In the case of Sawyer v. Berthold, 116 Minn. 441, 134 N. W. 120, it is held that:

"In an action against a physician to recover damages for negligent or unskilful treatment of a patient, the result alone is not evidence of negligence; but an expert witness may give his opinion, based upon the result, that the treatment must have been improper, and such an opinion is evidence on which the court or jury may find negligence."

The testimony offered by defendant as to the removal of the bandages and splints is in sharp conflict with that of plaintiff. The doctor, testifying in his own behalf, said that he was called and reduced the fracture which plaintiff had sustained on the evening of October 25, 1914; that in doing so he applied 2 board splints, securing them in proper place by means of putting 3 bandages around the same, knotting them tight on top of the splints, one near the wrist, one near the elbow and one midway between, following which he placed an adhesive plaster over the top of the knots, extended the same around the arm on the outside of the splints, and then wrapped the same with ordinary bandages, leaving the whole perfectly firm and solid; that on the following day plaintiff came to his office in the hospital, when he removed the outer bandage and took X-ray pictures of the arm, showing the same to be in good condition; that the splints were not removed until November 2, and again on November 8, 13, 19, 25, December 24 and 29; the defendant's testimony was corroborated in regard to these dates and treatments by his assistant Dr. Brodie, the hospital nurse and the hospital records. Defendant further testified that no hospital record was kept after December 29, but that plaintiff continued to come to the office every week or two until some time in March, 1915, and that during that time he removed and reapplied the splints as occasion and conditions required; that, when he examined the arm on December 29, he came to the conclusion that there was a lack of bone producing power

in the arm, and that they would have a slow and long process before they got a good arm; that there was a fibrous union of both bones; that up to this time the arm was straight and the bones in perfect alignment and that he so informed the plaintiff; that when he examined the arm in March he found that there was a nonunion of the radius and that the ulna was crooked, but nothing like it is now; that he then informed plaintiff of the condition and advised him that further methods were necessary, and that he would have to give another anaesthetic and treat the ununited ends of the ulna so that they would unite, and that plaintiff refused to submit to such treatment. At this stage of the trial defendant was asked the following question, and the following proceedings were had:

"Q. In your judgment had the plaintiff followed your advice, would a good arm have resulted? Plaintiff objects as incompetent, no foundation laid for it and inadmissible under the pleadings. Objection sustained. (By the Court) : I will say in the complaint it is charged that certain treatment given was not proper and, on the other hand, in the answer that it was proper; there is no charge there that the plaintiff neglected to do anything that was prescribed for him, consequently an affirmative defense on that question is not admissible. Defendant excepts."

Upon the trial 6 physicians were called and testified as expert witnesses on behalf of defendant, and each testified that the treatment of plaintiff as outlined by defendant was proper and in accordance with modern surgery.

It is not a case where the wrongdoer claims that the injured party could have reduced his damages by an operation to which he refused to submit. In such case the injured party is not required to submit to an operation for the benefit of the person who caused the injury. Maroney v. Minneapolis & St. Louis R. Co. 123 Minn. 480, 144 N. W. 149, 49 L.R.A.(N.S.) 756.

But in the case at bar, defendant contended throughout the trial that the condition of plaintiff's arm was due to no fault of his. That he properly reduced the fracture in the first instance is conceded by plaintiff's expert witnesses. Defendant claims that the failure of union was due either to some act of plaintiff, or to some cause for which neith-

er party was responsible, a situation which the testimony shows is not unusual in cases of this character. Defendant testified that he discovered the nonunion and apprised the plaintiff thereof, and advised him of the necessary treatment to be pursued from that time. Plaintiff declined to submit to the treatment. If defendant's claim of freedom from fault is well founded, a question he had a right to have submitted to the jury, it was his duty, upon discovery of the nonunion, to advise plaintiff of the necessary and proper treatment to be thereafter pursued. Proper advice is part of proper treatment, and if from that time on there was fault in anyone, it lay with plaintiff and not with defendant. It was defensive matter going directly to disprove the charge in the complaint, and not in mitigation of damages or to establish contributory negligence. Defendant claims that in this respect as well as in all others he performed his whole duty toward plaintiff; and in connection with his advice he had a right to state to the jury his opinion as to the result of the treatment he prescribed had it been followed. The testimony sought to be elicited was admissible under the pleadings and it was error to exclude it.

We are of the opinion that the order denying defendant's motion for judgment should be affirmed and that a new trial should be granted.

Order denying defendant's motion for a new trial is reversed.

Brown, C. J., took no part in this case.